UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| STEVE ADKISON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 3:14-cv-01394-MHH |
| | ) |
| RONNIE WILLIS, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Steve Adkison alleges that the defendant, Sheriff Ronnie Willis, violated the Americans with Disabilities Act of 1990 (ADA) and § 504 of the Rehabilitation Act of 1973 by placing Mr. Adkison on leave from his job as a Lauderdale County sheriff's deputy pending the results of a psychological evaluation. (Doc. 7). Pursuant to Federal Rule of Civil Procedure 56, Sheriff Willis has asked the Court to enter judgment in his favor on Mr. Adkison's claims. (Doc. 25). For the reasons stated below, the Court grants the motion for summary judgment.

### I.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for

summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. Adkison suffers from anxiety. (Doc. 7, ¶ 17). In 2010, Sheriff Willis became aware of "concerns from [Mr. Adkison's] colleagues and others regarding [Mr. Adkison's] ability to adequately perform [his] duties" as a Lauderdale County Sheriff's Deputy." (Doc. 7, ¶ 16; Doc. 25-1, p. 33). In addition, Sheriff Willis personally observed Mr. Adkison behaving differently, noting that sometimes Mr. Adkison would pace "like a lion up and down the halls." (Doc. 30-1, p. 13). This information, as well as written complaints from other employees and citizens of the community that had been filed against Mr. Adkison between 2000 and 2010, prompted Sheriff Willis to place Mr. Adkison on leave from his position as deputy

sheriff pending the results of a fitness-for-duty evaluation. (*See, e.g.*, Doc. 25-1, pp. 18–26; Doc. 7, ¶ 16).[1]

Approximately one month after placing Mr. Adkison on leave, Sheriff Willis received a letter from Dr. Andrew Wilkerson in which Dr. Wilkerson stated that he was "unaware of any information that would make [Mr. Adkison] unsuitable or incapable of performing law enforcement duties." (Doc. 7, ¶ 17). Dr. Wilkerson made clear, however, that his office did not perform fitness-for-duty examinations and that his letter should not "be construed as offering an opinion on Deputy Adkison's fitness for duty." (Doc. 25-1, p. 35). Nevertheless, shortly after he received Dr. Wilkerson's letter, Sheriff Willis reinstated Mr. Adkison, and Mr. Adkison participated in counseling for his anxiety. (Doc. 7, ¶ 18).

---

[1] Mr. Adkison argues that the Court should strike these complaints because they contain inadmissible hearsay and character evidence. (Doc. 29). The Court disagrees. The complaints are not hearsay because Sheriff Willis does not offer them for their truth but to show their effect upon him. *See Jefferson v. Burger King Corp.*, 505 Fed. Appx. 830, 836 (11th Cir. 2013) (classifying employee complaints against plaintiff as non-hearsay because they were offered not for their truth, but "only to establish that [the employer] had legitimate, non-discriminatory reasons for terminating [the plaintiff]"). The complaints are not character evidence because Sheriff Willis does not offer them to show that Mr. Adkison acted in conformity with any propensities the complaints might suggest, but rather as evidence of Sheriff Willis's non-discriminatory reasons for placing Mr. Adkison on leave. The Court also disagrees with Mr. Adkison's argument that the Court should strike the complaints as unauthenticated documents. (Doc. 29). At summary judgment, the Court may consider evidence as long as it "can be reduced to an admissible form" at trial. *See* Fed. R. Civ. P. 56(c)(2); *see also Kidd v. Mando American Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013) (quoting *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (internal quotation marks omitted)). To admit a document under Federal Rule of Evidence 901, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Nothing in the record suggests that Sheriff Willis cannot reduce the complaints to an admissible form at trial. For these reasons, the Court denies Mr. Adkison's motion to strike with respect to the complaints. (Doc. 29). To the extent that Mr. Adkison asks the Court to strike certain other portions of Sheriff Willis's affidavit on which the Court has not relied in this opinion, the Court denies Mr. Adkison's motion as moot.

In 2012, Sheriff Willis again placed Mr. Adkison on leave, pending receipt of a "written confirmation from a psychologist or psychiatrist [stating] that he or she is familiar with [Mr. Adkison's] job duties and that [Mr. Adkison is] able to perform these duties." (Doc. 7, ¶ 20).  As in 2010, Sheriff Willis placed Mr. Adkison on leave in response to unofficial comments and formal complaints regarding Mr. Adkison's erratic and aggressive behavior. (*See* Doc. 25-1, pp. 6–7, 37–49).  Mr. Adkison subsequently provided Sheriff Willis with a brief note from medical doctor Steve Wampler, M.D. which stated that Mr. Adkison had visited Dr. Wampler's clinic and could return to work immediately on "unrestricted duty." (Doc. 7, ¶ 21; Doc. 26-2, p. 12).  Sheriff Willis informed Mr. Adkison that Dr. Wampler's note was insufficient because Dr. Wampler is not a psychologist or psychiatrist and is unfamiliar with Mr. Adkison's duties as a deputy sheriff. (Doc. 7, ¶ 22, Doc. 30-1, p. 36).

Mr. Adkison then attempted to obtain a fitness-for-duty certification from Dr. Wilkerson, but Dr. Wilkerson, consistent with his remarks in 2010, informed Mr. Adkison that he did not perform fitness-for-duty examinations. (Doc. 7, ¶ 24; Doc. 25-1, p. 35).  Thus, early in 2013, Mr. Adkison visited Licensed Professional Counselor Rosemary Snodgrass. (Doc. 7, ¶ 25).  Ms. Snodgrass performed a "mental status examination."  (Doc. 7, ¶ 25; Doc. 25-1, pp. 76–77).  In her report, Ms. Snodgrass stated, "[in] light of the findings of the Mental Statues [*sic*] Evaluation and to address any questions regarding Mr. Adkison's ability to adequately perform his

duties it is my recommendation that Mr. Adkison be evaluated by Martin Sellbom, Ph.D." (Doc. 25-1, p. 77).

Dr. Sellbom performed a fitness-for-duty examination on Mr. Adkison over the course of April and May of 2013. (Doc. 25-1, pp. 79–91). In his 13-page report concerning Mr. Adkison, Dr. Sellbom stated, "[i]t is my opinion, based on reasonable scientific certainty, that Deputy Adkison is currently unfit to perform his duties as a Deputy Sheriff with the Lauderdale County Sheriff's Office."[2] (Doc. 25-1, p. 90). After receiving this report, Sheriff Willis informed Mr. Adkison that he had been found unfit for duty and would remain on leave until Mr. Adkison could obtain a fitness-for-duty certification. (Doc. 7, ¶ 28; Doc. 25-1, p. 93). A few months later, Mr. Adkison provided Sheriff Willis with two letters from the office of psychiatrist Dr. William Roddy purporting to declare Mr. Adkison fit to return to work as a sheriff's deputy. (Doc. 7, ¶ 31; Doc. 26-2, pp. 51, 53). Given the apparent conflict between the letters from Dr. Roddy's office and Dr. Sellbom's report, Sheriff Willis

---

[2] As he does with respect to the complaints in his personnel file, Mr. Adkison urges the Court to strike Dr. Sellbom's report. (Doc. 29). Like the complaints, however, Dr. Sellbom's report is offered not for its truth—that Mr. Adkison was unfit for duty in June of 2013—but as evidence that Sheriff Willis believed Mr. Adkison was unfit for duty in June of 2013. Thus, the Court does not regard Dr. Sellbom's report as expert testimony. (Doc. 29, p. 15). The Court considers Dr. Sellbom's letter as evidence of Sheriff Willis's rationale for placing Mr. Adkison on leave, not as evidence of Mr. Adkison's fitness for duty. *See infra*, pp. 11–12. The Court therefore denies Mr. Adkison's motion to strike with respect to Dr. Sellbom's report. (Doc. 29).

ordered Mr. Adkison to undergo another fitness-for-duty evaluation.[3]  (Doc. 26-2, p. 56).

Late in October of 2013, Mr. Adkison met with psychologist Dr. Roger Rinn, whom Sheriff Willis had asked to perform a fitness-for-duty evaluation for Mr. Adkison.  (Doc. 27-2, pp. 3–4).  Dr. Rinn reported, in a letter dated November 18, 2013, that it was his "impression that [Mr. Adkison] can return to work as soon as practical."  (Doc. 27-2, p. 29).  Weeks earlier, on October 25, 2013, Mr. Adkison had applied for employment with the Henry County Sheriff's Office.  (Doc. 26-1, p. 59).  The Henry County Sheriff's Office hired Mr. Adkison in November of 2013.  (Doc. 26-1, p. 60).  Sheriff Willis took this to mean that Mr. Adkison had resigned from the Lauderdale County Sheriff's Office, and on November 27, 2013, Sheriff Willis sent Mr. Adkison a letter confirming Mr. Adkison's resignation.  (Doc. 25-1, p. 114).  Mr. Adkison filed this lawsuit on July 18, 2014.  (Doc. 1).

In his amended complaint, Mr. Adkison asserts discrimination claims against Sheriff Willis in his official capacity under the ADA, the Rehabilitation Act, and the Family and Medical Leave Act of 1993 (FMLA).  (Doc. 7, ¶ 1).  Mr. Adkison also asserts a claim against Sheriff Willis in the sheriff's individual capacity under 42

---

[3] The letters from Dr. Roddy's office indicate that, at the time of Mr. Adkison's evaluation, the author of the letters was not familiar with the job requirements of a deputy sheriff.  For example, the second letter, which is dated October 14, 2013, states in relevant part, "I am not in a position to address some very specific aspects of Mr. Adkinson's [*sic*] daily work requirements . . . .  I do not have the expertise as a marksman or operator or [*sic*] a high performance law enforcement vehicle—just to name a few of the potential activities which I believe to be job specific skills of a Deputy Sheriff."  (Doc. 26-2, p. 53).  Dr. Roddy testified that his wife Wendy, who is not licensed to practice medicine in Alabama, authored and signed the letters.  (Doc. 27-1, p. 74–77).

U.S.C. § 1983 for violation of Mr. Adkison's Fourteenth Amendment right to equal protection. (Doc. 7, ¶ 2). The Court has already dismissed Mr. Adkison's claim against Sheriff Willis in his individual capacity, dismissed Mr. Adkison's claim under the FMLA, and limited Mr. Adkison's claim under the ADA to prospective injunctive relief. (Doc. 23). Sheriff Willis now asks the Court for summary judgment on Mr. Adkison's remaining claims. (Doc. 25).

## III. DISCUSSION

Mr. Adkison argues that by placing him on leave, refusing to reinstate him, and denying him reasonable accommodations for his disability, Sheriff Willis violated his rights under the ADA and the Rehabilitation Act. With respect to his ADA claim, Mr. Adkison seeks a Court order "requiring defendant to remove from Plaintiff's official, unofficial and human resource records all references and results of any and all psychological testing and derogatory assessment with respect to plaintiff's abilities to perform the functions of a law enforcement officer." (Doc. 7, p. 13). Mr. Adkison argues that this relief bears on his "prospects for future employment in the law enforcement fields." (Doc. 7, ¶¶ 2, 42–56; Doc. 12, p. 4).[4] The Court considers Mr. Adkison's ADA and Rehabilitation Act claims together. *See* 29 U.S.C. § 794(d)

---

[4] Because Mr. Adkison seeks prospective injunctive relief rather than money damages, the Eleventh Amendment does not bar Mr. Adkison's claim. *See Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health & Rehabilitative Services*, 225 F.3d 1208, 1219–20 (11th Cir. 2000) ("[T]he Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages.").

("The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.)"); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997) (applying the Court's analysis of the plaintiff's ADA claims "with equal force to his claims under the Rehabilitation Act").

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees [or] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Rehabilitation Act forbids recipients of federal funds from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability."[5] 29 U.S.C. § 794(a). To state a prima facie claim of discrimination under either statute, Mr. Adkison must show that "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). Sheriff Willis argues that Mr. Adkison fails at each step of this analysis. (Doc. 28, pp. 15–24). Although questions of fact exist regarding whether Mr. Adkison was disabled and whether he was a qualified individual under the ADA during his employment as a Lauderdale County sheriff's deputy, the record establishes as a matter of law that he was not subjected to unlawful discrimination because of his

---

[5] Sheriff Willis does not dispute that he is a recipient of federal funds. (Doc. 32).

disability. For this reason, the Court grants Sheriff Willis's motion for summary judgment.

### A. Disabled

Mr. Adkison asserts that he is disabled within the meaning of the ADA because Sheriff Willis regarded him as having a mental impairment while Mr. Adkison was employed as a deputy sheriff.[6] (Doc. 7, ¶¶ 21, 69). Before the 2008 Amendments, Mr. Adkison would have been required to show not only that Sheriff Willis regarded him as having an impairment, but also that Sheriff Willis perceived that impairment to substantially limit Mr. Adkison in a major life activity. *See Rossbach v. City of Miami*, 371 F.3d 1354, 1360 (11th Cir. 2004) (explaining that an employee is disabled under the ADA by virtue of being "regarded as" such only if the employer perceives the employee's disability as "substantially limiting and significant") (internal citation and quotation marks omitted); *see also Dulaney v. Miami-Dade County*, 481 Fed. Appx. 486, 489 n. 3 (11th Cir. 2012).

Under the current version of the ADA, such a showing is not required—Mr. Adkison may establish that he is disabled simply by showing that Sheriff Willis perceived him to have a physical or mental impairment, "whether or not the impairment . . . is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *see Dulaney*, 481 Fed. Appx. at 489 n. 3 ("In 2008 . . . Congress changed the definition of 'disability' such that being 'regarded as' having a disability no longer

---

[6] The Rehabilitation Act defines "individual with a disability," in relevant part, as "any person who has a disability as defined in section 12102 of Title 42." 29 U.S.C. § 705(2)(B).

9

requires a showing that the employer perceived the individual to be substantially limited in a major life activity."). Under this ADA standard, a reasonable jury could conclude that Mr. Adkison is disabled within the meaning of the ADA.

Sheriff Willis knew that Mr. Adkison suffered from anxiety. (*See* Doc. 7, ¶ 17; Doc. 30-1, pp. 43, 104). Sheriff Willis also knew that Mr. Adkison had been exhibiting unusual, aggressive, and oppositional behavior, and that this behavior was related to Mr. Adkison being "off his medication." (Doc. 25-1, pp. 3–6; Doc. 30-1, pp. 13, 26). Concerned for "everybody's safety," Sheriff Willis suspended Mr. Adkison from duty and ordered him to undergo psychological evaluation. (Doc. 7, ¶ 16, 20; Doc. 30-1, pp. 23, 26). These facts, viewed in the light most favorable to Mr. Adkison, support the reasonable inference that Sheriff Willis regarded Mr. Adkison as having a mental impairment. Therefore, summary judgment is inappropriate with respect to Mr. Adkison's claim that he is disabled under the ADA.

**B.    Qualified Individual**

A qualified individual under the ADA is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8). Mr. Adkison contends that, despite his perceived disability, he was qualified for his job at all times during his employment as a deputy sheriff. (Doc. 7, ¶¶ 6, 46, 50). According to Sheriff Willis, Dr. Sellbom's June 2013 report establishes that Mr. Adkison was unable to perform the essential functions of his job and was thus unqualified. (Doc. 28, p. 16). As noted

above, however, the Court, at this stage, considers Dr. Sellbom's report as evidence only of Sheriff Willis's rationale for placing Mr. Adkison on leave—not as evidence of Mr. Adkison's inability to perform the essential functions of his job. *See* n. 1, 2, *supra*. Dr. Sellbom's report, therefore, does not have the evidentiary impact Sheriff Willis would like.

Also unpersuasive is Sheriff Willis's argument that because Mr. Adkison could not produce medical evidence that he could perform his job's essential functions, Mr. Adkison was unqualified under the ADA. (Doc. 28, p. 16). An absence of medical evidence that Mr. Adkison could perform the essential functions of his job does not constitute evidence that he could not. Under such logic, every sheriff's deputy without an explicit endorsement from a psychiatrist or psychologist familiar with the job's essential functions would be unqualified for his or her job.

Furthermore, Sheriff Willis does not specify which essential functions of a Lauderdale County Sheriff's Deputy he believes Mr. Adkison was unable to perform. In its "Position Description" for deputy sheriff, the Lauderdale County Sheriff's Office lists as required skills "[e]motional stability to work in stressful and dangerous situations" and the ability to "[m]aintain[] good public relations with citizens." (Doc. 25-1, pp. 15, 17). Given Sheriff Willis's reasons for placing Mr. Adkison on leave, the Court considers these to be the functions at issue and, for the purposes of this opinion, considers them essential. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (quoting 42 U.S.C. 12111(8)) ("In determining what functions are

11

deemed essential," courts consider the employer's judgment, and "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.")

Based on the available evidence, it is not clear that Mr. Adkison could not perform these functions. As with Dr. Sellbom's report, the Court considers the written complaints against Mr. Adkison only as evidence of Sheriff Willis's reasons for placing Mr. Adkison on leave, not as evidence of Mr. Adkison's inability to perform the duties of a deputy sheriff. Dr. Rinn's letter, though issued too late to form a basis on which to reinstate Mr. Adkison, provides at least some evidence that Mr. Adkison was in fact able to perform his job's essential functions. (Doc. 27-2). Mr. Adkison's three decades of law enforcement experience support this proposition as well. (Doc. 7, ¶ 13). Thus, the record reveals a genuine dispute of material fact as to whether Mr. Adkison could perform the essential functions of his job and whether, therefore, he was a qualified individual under the ADA.

## C.  Discrimination

One way an employer discriminates against an employee under the ADA is by "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Mr. Adkison argues that Sheriff Willis discriminated against him—

once in 2010 and again in 2012—by requiring him to undergo fitness-for-duty examinations before allowing him to return to work. (Doc. 7, ¶¶ 34, 36).

The Eleventh Circuit has held that "[i]n any case where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job related and consistent with business necessity." *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999). The plaintiff in *Watson*, a police officer, was placed on leave pending psychological evaluation because his supervisor "became increasingly concerned about what he perceived to be [the plaintiff's] display of unusually . . . antagonistic behavior towards his co-workers." *Id.* at 934. The supervisor in *Watson* based his decision to place the plaintiff on leave, in part, on a review of complaints made against the plaintiff. *Id.* at 934. The Court in *Watson* concluded that because the employer "had good cause for concern as to whether [the plaintiff] was fit to be a police officer[,] no . . . rational juror could find that [the employer] acted improperly by ordering [the plaintiff] to undergo the fitness for duty examination." *Id.* at 935.

Like the supervisor in *Watson*, Sheriff Willis acted on employee and citizen complaints that described Mr. Adkison's behavior as hostile, reports from other employees that Mr. Adkison was behaving antagonistically toward them, and Sheriff Willis's own observations of Mr. Adkison "acting different." (Doc. 30-1, pp. 13, 26). Based on this information, Sheriff Willis had good cause for concern as to whether Mr. Adkison was fit to be a police officer. Thus, Sheriff Willis's decisions to place

Mr. Adkison on leave and require him to undergo fitness-for-duty evaluations before returning to work were job-related and consistent with business necessity, and do not constitute discrimination under § 12112(d)(4)(A).  *See Watson*, 177 F.3d at 935.

In addition to prohibiting certain medical examinations and inquiries, the ADA provides that an employer discriminates against an employee by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship."  42 U.S.C. § 12112(b).  Mr. Adkison contends that Sheriff Willis discriminated against him by denying him "reasonable accommodation that would have enabled him to return to his position as a Deputy in Lauderdale County."  (Doc. 7, ¶ 48, 54).

Eleventh Circuit precedent is clear that under the ADA and the Rehabilitation Act, "a plaintiff cannot establish a claim . . . alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation."  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).  Despite Sheriff Willis's offer to "consider any and all propositions for reasonable accommodations that would allow [Mr. Adkison] to still perform [his] job," Mr. Adkison never made a request for accommodations of any kind.  (Doc. 26-1, pp. 40–41).  Thus, Mr. Adkison's claim that Sheriff Willis discriminated against him by failing to provide reasonable accommodations fails as a matter of law.

Finally, Mr. Adkison argues that Sheriff Willis "constructively discharged" him by refusing to reinstate him until he could obtain a valid fitness-for-duty certification from a psychologist or psychiatrist familiar with the job duties of a deputy sheriff. (Doc. 7, ¶¶ 20, 52). An employer constructively discharges an employee in violation of the ADA by deliberately making the employee's working conditions "so unbearable that a reasonable person in [the employee's] position would be compelled to resign." *Virgo v. Riviera Beach Assoc.*, 30 F.3d 1350, 1363 (11th Cir. 1994); *see also Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). The Court "do[es] not consider an employee's subjective feelings about his employer's actions," in analyzing claims of constructive discharge, but rather relies on an objective standard. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998).

Proving constructive discharge is "a more onerous task than establishing a hostile work environment claim," and requires a plaintiff to "demonstrate a greater severity or pervasiveness of harassment." *Bryant*, 575 F.3d at 1298 (internal citation and quotation marks omitted). Indeed, the Eleventh Circuit has "set a high bar for claims of constructive discharge." *Matias v. Sears Home Improvement Products, Inc.*, 391 Fed. Appx. 782, 788 (11th Cir. 2010). To succeed, Mr. Adkison must show that Sheriff Willis intentionally created intolerable working conditions for him and thereby forced him to quit his job. *Bryant*, 575 F.3d at 1298.

Mr. Adkison has not met this burden. Sheriff Willis's decision to place Mr. Adkison on leave—much of it with pay—does not constitute the kind of intolerable

working environment that would force a reasonable person to resign, especially considering that Sheriff Willis had evidence that Mr. Adkison was psychologically unfit to perform the duties of his job. *See Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 929 (8th Cir. 2000) (declining to find constructive discharge where an employee suspected of unprofessional behavior was suspended without pay for 120 days, denied a pay raise, and admonished concerning his behavior).

Furthermore, there is no evidence that Sheriff Willis intended to force Mr. Adkison to resign. To the contrary, Sheriff Willis remained in contact with Mr. Adkison throughout his leave and even arranged and paid for Mr. Adkison's evaluations with Dr. Sellbom and Dr. Rinn. (*See* Doc. 7, ¶ 22; Doc. 27-2, p. 3). By the time Sheriff Willis received Dr. Rinn's letter indicating that Mr. Adkison could return to work, Mr. Adkison already had accepted employment in Henry County. (Doc. 26-1, p. 60; Doc. 27-2). At no time during Mr. Adkison's employment with the Lauderdale County Sheriff's Office did Sheriff Willis possess a fitness-for-duty certification from a licensed psychiatrist or psychologist, yet maintain his refusal to reinstate Mr. Adkison. Faced with these facts, no reasonable jury could find that Sheriff Willis deliberately made Mr. Adkison's work environment so unbearable that a reasonable person in Mr. Adkison's position would have been forced to resign. *See Virgo*, 30 F.3d at 1363. Accordingly, Sheriff Willis did not constructively discharge Mr. Adkison.

In sum, although questions of fact exist regarding whether Mr. Adkison was disabled and whether he was a qualified individual under the ADA, the record establishes as a matter of law that Mr. Adkison was not subjected to unlawful discrimination because of his alleged disability. Accordingly, Mr. Adkison has failed to establish a prima facie case of discrimination under the ADA and the Rehabilitation Act, and Sheriff Willis is entitled to summary judgment on Mr. Adkison's claims.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Sheriff Willis's motion for summary judgment. Mr. Adkison's claims are **DISMISSED WITH PREJUDICE**. The Court **DENIES** Mr. Adkison's motion to strike and asks the Clerk to please **TERM** Docs. 25 and 29. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 30, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE